**SO ORDERED: July 8, 2016.**



**Robyn L. Moberly**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANDREW EVERITT HURST | ) | CASE NO. 16-498-RLM-13 |
| | ) | |
| Debtor | ) | |
| _____ | ) | |

**ORDER OVERRULING CREDITOR'S OBJECTION TO CONFIRMATION**

This matter came before the Court for hearing on June 13, 2016 upon the objection filed by Meghan Huffman ("Meghan") to confirmation of the debtor's chapter 13 plan.  For the reasons stated below, the Court overrules the objection.

***Background***

The debtor and Meghan were married and Meghan filed for divorce in 2014. Meghan and the debtor entered into an agreement denominated a "Decree and Property Settlement Agreement" (the "Agreement") which was approved read into the record and ordered by the Delaware County Circuit Court (the "State Court") on August 10, 2015.  The parties have no children and, at the time of the divorce, owned no real estate.  The Agreement contained two parts, entitled "Marital Assets" and "Marital

Liabilities".  Under the "Marital Assets" section, the parties divided their personalty evenly and each party was ordered to pay the indebtedness on the property they received.  There is no evidence of the value of the personalty awarded each party, nor the liability associated with each item of personalty.  This section of the Decree also awarded each party's respective bank accounts and retirement accounts to them, but it does not state the values of each account and no evidence was presented of value.

The "Marital Liabilities" section of the Agreement ordered Meghan to pay the marital loan to Cindy Huffman, but the parties did not provide any evidence of the balance due on the loan at the time of the entry of the Decree.  Each party agreed to pay their own student loans, but no evidence was presented as to the amount owed by each party.

Paragraph 19 under the "Marital Liabilities" section provided that:

> 19.  Offsetting Payment.  The parties agree, as a compromise amount, that the Respondent (debtor) make an offsetting payment directly to Petitioner (Meghan), to create an equitable division of the marital estate, in the amount of Nineteen Thousand Five Hundred Dollars ($19,500) to be paid in full in 48 months from this date.  The Respondent agrees to make payments of at least Two Hundred Fifty Dollars ($250.00) per month.  If the Respondent fails to make the payments as required and provided herein, the amount shall become a judgment and shall accrue 8% interest per annum thereon.

The liabilities section also contained another provision that the debtor would contribute up to $130 a month for Meghan's health insurance but would no longer be obligated to contribute if Meghan received governmental assistance or free health insurance.  The only issue actually argued before and decided by the State Court at the final hearing in the divorce was the issue of payment of Meghan's attorney fees.  The State Court's fee order provided in part that Meghan "suffers from a serious physical condition which severely limits her ability to work outside the home".  The State Court ordered that the debtor pay $2,750 of Meghan's attorney fees, about half of the fees she had incurred up to that point.

The debtor filed his chapter 13 case on January 30, 2016, without having made any payments to Meghan.  His chapter 13 plan provided that he would pay the trustee $150 a month for 36 months, or a total of $5,400. His bankruptcy attorney fees of

$3,000 are to be paid through the plan.  Other than attorney and trustee fees, the plan provides for no other priority debt.  The plan is an entirely unsecured creditor plan, with all funds remaining after payment of trustee and attorney fees to be distributed pro rata among unsecured creditors with allowed claims.  The deadline to file a claim in the chapter 13 case has passed and Meghan has not filed a claim.  Meghan objected to the plan on the basis that the payment due to her under the Agreement is a domestic support obligation and thus entitled to priority treatment and full payment under the debtor's chapter 13 plan.[1]

### *Discussion*

Federal law determines whether a debt is in the nature of support or alimony under 523(a)(5) or property settlement under 523(a)(15).  *In re Buchanan*, 2013 WL 3216133, Adv. No. 12-50157 (Bankr. S. D. Ind. June 25, 2013).  The bankruptcy court is not bound by the state court's characterization of the obligation, but the intent of the state court is dispositive*.  Id*.  The court uses a "totality of the circumstances" test to determine dischargeability under section 523(a)(5). *In re Hayden* , 456 B.R. 378, 382 (Bankr. S.D. Ind. 2011).  Factors considered in the "totality of the circumstances" test include (1) the parties' shared intent at the time of the divorce, (2) the substance of the obligation and the function it was intended to serve; (3) the placement of the obligation within the decree and the label given to it and the context in which it appears; (4) the number and frequency of payments; (5) whether payment is a lump sum or payments over time; (6) how the obligation is treated for tax purposes and (7) whether obligation terminates on death or remarriage.  *In re Combs*, 543 B.R. 780 (Bankr. E. D. Va. 2016); *In re Okrepka*, 533 B.R. 327 (Bankr. D. Kan. 2015*); In re McLain*, 533 B.R. 735 (Bankr. C.D. Ill. 2015*); In re Swartz,* 339 B.R. 497 (Bankr. W. D. Mo. 2006).

Applicable state law is helpful in determining the legal context of a negotiated agreement between the parties by understanding the legal boundaries of a potential

---

[1] A "domestic support obligation" (DSO) under §101(14A) is a debt that is owed to a former spouse that is in the nature of alimony, maintenance or support "without regard to whether such debt is expressly so designated".  A DSO enjoys first-tier payment priority under §507(a)(1).  Sections 1322(a)(2) provides that a chapter 13 plan shall provide for full payment, in deferred cash payments, of all claims entitled to priority under §507.  A request to determine that a debt is a DSO (and thus nondischargeable under §523(a)(5)) is to be brought in complaint form as an adversary proceeding under Fed. R. Bankr. P. 7001 (6).  The debtor has not objected that the matter has been brought by way of plan objection and not by adversary complaint.

state court decision.  Ind Code §31-15-7-2 provides that an award of maintenance may be appropriate if (1) the spouse is so physically or mentally incapacitated to the extent her ability to support herself is materially affected or (2) the spouse lacks sufficient property to provide for her needs *and* the spouse has custody of a child whose physical or mental incapacity requires the spouse to forego employment.  In lieu of an award of maintenance, a state court may award rehabilitative maintenance for a period *not to exceed three (3) years* if the spouse had employment or education interrupted as a result of homemaking or child care responsibilities.  In determining whether to award rehabilitative maintenance, the state court considers the parties' respective educational levels and earning capacities, and the time and expense necessary for the spouse to acquire sufficient education to find appropriate employment.

A state trial court may order a party in a dissolution proceeding to pay a reasonable portion of the other party's attorney's fees, after considering the parties' resources, economic condition, ability to engage in gainful employment and earn income, and other factors bearing on the reasonableness of the award. *Troyer v. Troyer,* 987 N.E.2d 1130, 1142–43 (Ind. Ct. App. 2013); Ind Code §31–15–10–1. These factors are considered in order to promote the legislative purpose of insuring that a party in a dissolution proceeding who could not otherwise afford an attorney is able to retain representation. *Id.* at 1143; *Ahls v. Ahls*, 2016 WL 930961, No. 34A02-1509-DR-1416, at *4 (Ind. Ct. App. 2016).

Here the State Court only had to approve the Agreement reached between the parties beforehand, so it is the parties' intent that is dispositive. The Agreement specifically states that the parties intended the $19,500 obligation to be an equalization award that "evened up" the division of property, and not maintenance.  Paragraph 19 is labelled "Offsetting Payment", and other terminology used in paragraph 19 includes "compromise amount" and "equitable division".  The words "maintenance" or "support" are not mentioned.  The clearly-stated purpose of the obligation was "to create an equitable division of the marital estate".  The obligation is a lump sum, even though the debtor could pay it in installments.  The obligation is to be paid in full within a stated number of months (48) and does not terminate upon the occurrence of an event (death, remarriage, or a change in Meghan's financial or medical circumstances).  The

Agreement is silent as to how the debtor's installment payments were to be treated for tax purposes.  Had the parties intended that the payments be in the nature of maintenance, the Agreement would most likely have required Meghan to declare the installments received as income and the debtor to treat the installments paid as deductions.   Factors under Ind Code §31-15-7-2 that a state court typically would consider in awarding maintenance or rehabilitative maintenance are not present in the Agreement, either.  The parties had no children, and so the factors that consider the needs of the custodial parent and the child do not apply.  The Agreement says nothing and no evidence was presented to the court about any physical or mental incapacity that materially affects Meghan's ability to support herself. Meghan presented no expert medical testimony about the condition of her health or her employment prospects.  The Agreement says nothing about Meghan's employment or education having been interrupted as a result of the marriage, nor did she present evidence of an interruption affecting her employability.  The Agreement does not mention the parties' respective educational levels and earning capacities, or the time and expense it would take for Meghan to acquire sufficient education to find appropriate employment.  She is pursuing further education in order to be employed in a job that does not require her to stand up, so she is clearly employable. No evidence was presented regarding these factors.  The Agreement provides that the parties will keep their respective retirement accounts and will pay their own student loans, but gives no amounts for the accounts or the loans and no evidence was presented to this court regarding the balances and amounts of these accounts and debts.  The parties had divided their bank accounts before the Agreement was executed, but there is no mention of who got what account or how much was in them.  There is no relationship between the obligation's amount or length of payments and Meghan's health or employment prospects or the ability to support herself.  The obligation is not in the nature of maintenance.  It is not in the nature of rehabilitative maintenance because it exceeds 3 years.  The obligation is not a domestic support obligation under §523(a)(5).

The debtor's response to Meghan's objection refers only to the $19,500 "offsetting payment".  Meghan's objection does not specifically refer to any particular obligation set out in the Agreement, but she attached a copy of the Agreement to her

objection.  The Court, then, presumes that Meghan argues that the $130/ month insurance contribution and the $2750 attorney fee award, too, are domestic support obligations.  The Court finds that the $130/ month insurance obligation is not a domestic support obligation for the reasons stated above, and that the $2,750 attorney fee award is dischargeable because it was incurred with respect to a property settlement agreement.  See, *Combs*, at 796 (attorney fees are tied to the underlying nature of the debt for which they were incurred).  The Court finds that the $19,500 debt, the $130/ month insurance contribution and the $2,750 attorney fee award are §523(a)(15)-type debts.  Such debts are not excepted from discharge *in a chapter 13 case* under §1328(a).  Accordingly, Meghan's objection to the debtor's chapter 13 plan is overruled.

#   #   #